# *Ex parte* Mayor and Aldermen of Birmingham.

### *Habeas Corpus Proceedings.*

1. *Constitutional law; construction of act establishing inferior court of criminal jurisdiction for city of Birmingham; legality of contract for hire of city convicts.*—The act approved February 11, 1895, entitled "An act to establish an inferior court of criminal jurisdiction in the city of Birmingham, to define its powers, and to provide for the election of a judge and the appointment of a clerk therefor," (Acts of 1894-95, p. 527), conferring on such court exclusive jurisdiction of all offenses against the by-laws and ordinances of the city, and giving power and authority to such court to allow a defendant therein to confess judgment for the fine and costs, and if such fine and costs be not paid or judgment confessed therefor, then to sentence the defendant to hard labor for the Mayor and Aldermen for such fine and costs, section 11 of said act, which provides "that the Mayor and Aldermen of Birmingham shall establish a system of hard labor or may contract to have all persons sentenced to hard labor for said city worked and confined anywhere in Jefferson county, under the same rules, regulations and conditions as are prescribed by law for confining and working county convicts," is not obnoxious to section 2 of Article IV of the Constitution, which requires that the subject of each law shall be clearly expressed in its title; the enactment of said section 11 being necessary in order to have carried out the sentence to hard labor for the Mayor and Aldermen of the city, and being a

[*Ex parte* Mayor and Aldermen of Birmingham.]

necessary complement to the powers of the court conferred by the statute.

2.   *Same; construction of city charter; legality of contract for hire of city convicts.*—Under the charter of the city of Birmingham, (Acts of 1890-91, p. 114), which confers on the Mayor and Aldermen authority to contract and do all other acts in respect of the powers therein granted, and which, by section 21 thereof, provides that the Mayor and Aldermen shall have full power to make ordinances for the good of the city, and "to affix thereto penalties for a violation of the same by fine * * * and by imprisonment to hard labor for the city * * * * one or both," and that all persons convicted for a breach of any such ordinances "failing to pay or secure such fine, may be imprisoned * * * or placed to hard labor for the city until such fine and costs are paid," a contract by the Mayor and Aldermen for the hire of persons sentenced to hard labor on conviction for violation of the city ordinances, is authorized as being within the power conferred, and is valid.

3.   *Judgment and sentence; sufficiency thereof.*—Upon the conviction of a defendant, a sentence, after imposing a certain term at hard labor, that "if the fine and costs are not paid, defendant is sentenced to hard labor," as a sentence to hard labor for the payment of fine and costs, is too indefinite and is insufficient. The court should first judicially ascertain and adjudge that the fine and costs are not paid, and then sentence accordingly as provided by law, instead of leaving the term open as an undetermined fact.

The facts of the case are sufficiently stated in the opinion.

R. J. LOWE, TILLMAN & CAMPBELL, and B. M. ALLEN, for petitioner, cited *Ballentyne v. Wickersham,* 75 Ala. 533 ; *Judson v. Bessemer,* 87 Ala. 240 ; *Morris v. S. & N. R. R. Co.,* 65 Ala. 193 ; *Tatum v. State,* 82 Ala. 5 ; *Block v. State,* 66 Ala. 493 ; *Ex parte Moore,* 62 Ala. 474 ; *Hare v. Kennerly,* 83 Ala. 608 ; *Randolph v. Builders & Painters Supply Co.,* 106 Ala. 501.

S. L. WEAVER, J. L. COLE, and J. M. MCMASTER, *contra*.

COLEMAN, J.—On the 14th day of April, 1897, John H. Powell having been arrested on a charge of disorderly conduct in violation of section 599 of the by-laws and ordinances of the city of Birmingham, entered a plea of guilty in the inferior court of criminal jurisdiction in the city of Birmingham. The judgment entry is as follows : "Defendant pleaded guilty. On hearing the evidence

the court is of the opinion that defendant is guilty, and it is ordered and adjudged by the court that the defendant is guilty and is fined $15 and cost and thirty days extra at hard labor. If fine and costs are not paid, defendant is sentenced to hard labor for the Mayor and Aldermen of Birmingham.'' Under and by virtue of a contract made and entered into between the Mayor and Aldermen of the city of Birmingham and the Sloss Iron & Steel Company, the said Powell was delivered to the latter as a convict to perform the sentence to hard labor imposed by the court. The said defendant Powell thereupon filed his petition before the Hon. James J. Banks, judge of the circuit court, in which he alleged the fact of his conviction and sentence and his imprisonment by the Sloss Iron & Steel Company under and by virtue of said agreement, and prayed for the writ of *habeas corpus*. The writ issued according to the prayer of the petition, and at the hearing the prisoner was discharged. Upon the order of the judge on *habeas corpus* discharging the prisoner, the Mayor and Aldermen petitioned this court for a *certiorari*. It contains a full statement of all the proceedings in the inferior criminal court, and before the judge on the hearing of the *habeas corpus*, and the evidence adduced on the latter trial.

The material question presented by the record is, whether the Mayor and Aldermen of the city of Birmingham were authorized to make the contract with the Sloss Iron & Steel Company. In considering this question, we must consider the constitutionality of section eleven of the act establishing the inferior court which adjudged the defendant guilty, and imposed upon him the sentence to hard labor.—Acts of 1894-95, p. 527.

Article IV, section 2 of the constitution provides that, ''Each law shall contain but one subject, which shall be clearly expressed'' in its title, (with certain specified exceptions, none of which include the act under consideration) ; ''and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length.'' The title of the act in which said section eleven is contained, is as follows : ''An act to establish an inferior court of criminal jurisdiction in the city of Birmingham, to define its powers, and provide for the

election of a judge and appointment of a clerk therefor."
Section eleven of said act is as follows: "Section 11.
Be it further enacted, that the Mayor and Aldermen of
Birmingham shall establish a system of hard labor, or
may contract to have all persons sentenced to hard labor
for said city, worked and confined anywhere in Jefferson
county, under the same rules, regulations and conditions
as are prescribed by law for confining and working
county convicts," &c. The purpose of the act as mani-
fested by its title was to establish and define the powers
of an inferior court of criminal jurisdiction, and provide
for the election of a judge and appointment of a clerk
therefor.

A mere cursory reading of section eleven of the act in
connection with section 2, article IV of the constitution,
would lead to the conclusion that it was in violation of
the constitution, and null and void; but when well es-
tablished principles of construction are applied to it, we
are of opinion its constitutionality can be maintained.
In the first place, no law should be declared unconstitu-
tional unless it is clearly so. Again, in construing the
constitutional provision under consideration, this court
has said that its requirements are not to be exactingly
enforced, or in such manner as to cripple legislation,
and adopted the following language: "The exigencies
of legislation require that this provision should not be
so strictly [literally?] construed as to cripple the legis-
lature, by prohibiting the insertion into laws of those
matters which, though they may not be specifically ex-
pressed in the title, are proper to the full accomplish-
ment of the object so expressed; such is presumed to
have been the intention of its authors. Courts, there-
fore, give it a liberal construction. The insertion in a
law of matters which may not be verbally indicated by
the title, if suggested by it, or connected with, or proper
to the more full accomplishment of the object so indi-
cated, is held to be in accordance with its spirit; but a
more liberal construction can not be given, without
letting in the evils which the provision was intended to
exclude. We may add, that if the questioned clause,
or clauses, be not so correlated to the subject expressed
in the title, as to appear to follow as a natural and legiti-
mate complement, then they can not stand under the
clause of the constitution under discussion."—*Ballentyne
v. Wickersham,* 75 Ala. 533, 539.

It is generally held, that when the subject is expressed in general terms, whatever is referable and cognate to the general subject, or whatever is necessary to a complete enactment in regard to it, or whatever results as a complement to the general expression, or necessary to the end in view, is included in and authorized by the constitutional provision.—*Woolf v. Taylor*, 98 Ala. 254; *Barnhill v. Teague* 96 Ala. 207.

The title of the act is "An act to establish an inferior court of criminal jurisdiction, and to define its powers." The first section of the act confers on the court exclusive jurisdiction of all offenses against the by-laws and ordinances passed and ordained by the Mayor and Aldermen of Birmingham within the territory embraced in the police jurisdiction of the city, and of all misdemeanors committed in precincts twenty-one and thirty-seven in Jefferson county except violations of the revenue law.

Section 5 of the act provides that a trial in this court shall be a bar to any subsequent prosecution for the act for which he was tried.

Section 7 provides as follows: "Sec. 7. *Be it further enacted*, that the police court shall have power and authority to allow the defendant to confess judgment with two sureties in favor of the Mayor and Aldermen of Birmingham, for the amount of the fine and costs imposed on such defendant, and if such fine and costs be not paid or judgment confessed therefor, then to sentence such defendant to hard labor for the Mayor and Aldermen, for the fine and for all costs for the time prescribed by law, for such offense."

It is evident that one purpose of the act was to give the city the benefit of all fines and convictions entered in this court. By section 7, judgment was to be confessed in favor of the Mayor and Aldermen of the city, and if the fine and costs were not paid or judgment confessed, then the court was empowered "to sentence to hard labor for the Mayor and Aldermen." One who violates the city ordinance, or is guilty of a State misdemeanor and convicted in this court, who refuses to pay the fine or to confess judgment, must go unpunished unless he be sentenced to hard labor for the Mayor and Aldermen of the city. The power to sentence to hard labor for the Mayor and Aldermen is clearly included in the title to the act and is constitutional. There being

no law in existence by which the sentence of the court, legally imposed, could be executed, the act itself would be incomplete and wholly ineffectual for the purposes intended, unless the act itself made provision for the enforcement of its sentence. The enactment of section 11 was necessary for the purposes in view and a necessary complement to the powers of the court, conferred by the statute. We are of opinion that the statute is not obnoxious to the constitutional provision, and the court erred in holding it to be unconstitutional.

But the defendant having been convicted and sentenced for a violation of a city ordinance, and not for a State misdemeanor, the legality of the judgment of conviction and sentence may be supported upon another ground. The first section of the charter (Acts of 1890-91, p. 114) confers upon the Mayor and Aldermen authority to contract and do all other acts in respect to the powers herein granted. By section 21, the Mayor and Aldermen have full power and authority to make and declare ordinances and laws, for the good government and order of the city, and "to affix thereto penalties for violation of the same by fine, not exceeding one hundred dollars, and by imprisonment or hard labor for the city not exceeding thirty days, one or both, and all persons convicted for breach of any by-laws or ordinance or charter provisions, failing to pay or secure such fine, may be imprisoned for such failure, or placed to hard labor for the city, until such fine and cost are paid, in such manner and for such time, as the board may direct, not longer than sixty days."

The contract made with the Sloss Iron & Steel Company was authorized by the power and authority herein conferred, so far as it applies to convictions for violations of the city ordinances, and the judgment and sentence of the court in the case at bar seems to be strictly within the provisions.

It follows that the court erred in its order discharging the prisoner, and judgment will be here rendered reversing and annulling the same, and dismissing the petition of the prisoner, and remanding him to custody.

We deem it proper here to call attention to the form of the judgment and sentence of the court. So far as it imposes a sentence to hard labor for thirty days extra, the sentence though not full and formal, is sufficient.

The sentence to hard labor for the fine and costs is too indefinite, and cannot be held sufficient. The court should judicially ascertain and adjudge that the fine and costs are not paid, and sentence accordingly, instead of leaving it open as an undetermined fact.

Reversed, and petition for *habeas corpus* dismissed.